IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

ERNEIFRANK JOHANDER MIQUILENA
GARCIA,

          Petitioner,

 vs.

PAMELA BONDI, Attorney General, KRISTI
NOEM, Secretary, U.S. Department of
Homeland Security, TODD M. LYONS, Acting
Director of Immigration and Customs
Enforcement, and DAVID EASTERWOOD,
Acting Director, St. Paul Field Office
Immigration and Customs Enforcement,

          Respondents.

Case No. 0:26-cv-01371-SHL-ECW

**ORDER GRANTING IN PART
VERIFIED PETITION FOR WRIT OF
HABEAS CORPUS**

## I.     INTRODUCTION.

Petitioner is a citizen of Venezuela who has been present in the United States since 2022. Petitioner was arrested by officials with U.S. Immigration and Customs Enforcement ("ICE") on February 11, 2026. Respondents assert that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2) without the opportunity for a bond hearing. For reasons set forth below, the Court disagrees and therefore GRANTS IN PART Petitioner's Verified Petition for Writ of Habeas Corpus. Within seven days, Respondents must provide Petitioner with an individualized bond hearing in Immigration Court pursuant to 8 U.S.C. § 1226(a). The Immigration Judge must decide the issue of bond or detention on the merits and may not conclude that jurisdiction to order bond does not exist.

## II.     FINDINGS OF FACT.

Respondents largely do not dispute the facts in the Verified Petition, and thus the Court accepts them as true except where Respondents have presented contrary evidence. Petitioner is a citizen of Venezuela who entered the United States in the summer of 2022. (ECF 1, ¶ 12.) He does not explicitly allege that he has prior removal proceedings, but states that he has a work permit and does not have a final order of removal. (Id., ¶ 13.) Thus, at minimum, it is clear that Petitioner has had prior interactions immigration officials. Petitioner was arrested by federal agents on

February 10 or 11, 2026.[1] (*See* Id., ¶ 15; ECF 5-3, p. 2.) Petitioner was initially detained at the Bishop Henry Whipple Federal Building. (ECF 1, ¶ 19.) According to documents submitted by Respondents, Petitioner was transferred to El Paso, Texas, then returned to Minnesota. (ECF 5-3, p. 2.) Petitioner sues Respondents in their official capacities, seeking, among other forms of relief, immediate release from custody. (ECF 1, pp. 17–18.)

On February 12, 2026, the Court entered an Order to Show Cause requiring Respondents, among other things, to "certify[] the true cause and duration of Petitioner's detention in light of the issues raised in the habeas petition" and explain "[w]hether Petitioner was arrested pursuant to a warrant and, if so, [provide] a copy of such warrant." (ECF 3.) Respondents filed a response on February 17, 2026. (ECF 4.) Respondents argue as a matter of law that Petitioner is subject to mandatory detention as an "applicant for admission" pursuant to 8 U.S.C. § 1225(b)(2). (Id.) Respondents also submitted the following documents: (1) an administrative warrant, Form I-200, dated February 11, 2026, which states there is probable cause to believe Petitioner is removable based on "statements made voluntarily by the subject to an immigration officer and/or other reliable evidence" (ECF 5-1); (2) a Notice to Appear dated February 13, 2026, identifying Petitioner as "an alien present in the United States who has not been admitted or paroled" and charging him with removal pursuant to sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act[2] (ECF 5-2, pp. 1, 4); and (3) a Form I-213 dated February 13, 2026, showing, among other things, that Petitioner was sentenced in July 2025 to two years of probation for a DWI. (ECF 5-3, pp. 1, 3.)

Petitioner filed a reply, reiterating his request for immediate release based on the inapplicability of § 1225(b) and insufficiencies of the warrant. (ECF 6.) In the alternative, Petitioner requests leave to file a motion for limited discovery to determine the factual basis for the administrative warrant used to justify Petitioner's arrest, when it was served in relation to his detention, and the qualifications of the person purporting to serve it. (Id., p. 8.)

## III.   HABEAS CORPUS STANDARDS.

Petitioner is entitled to writ of habeas corpus if, as relevant here, "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

---

[1] Petitioner alleges he was arrested on February 11, 2026. (ECF 1, ¶ 15.) The administrative warrant (Form I-200) is likewise dated February 11, 2016 (ECF 5-1), but the narrative on Form I-213 states that he was arrested on February 10, 2026 (ECF 5-3, p. 2).

[2] Codified at 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I), respectively.

"Th[e] right [of habeas corpus] extends to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003) and *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). Petitioner bears the burden of proving by a preponderance of the evidence that her detention is unlawful. *See Walker v. Johnston*, 312 U.S. 275, 286–87 (1941); *see also Bradin v. U.S. Prob. & Pretrial Servs.*, No. 22-3032, 2022 WL 1154622, at *3 (D. Kan. Apr. 19, 2022) (collecting cases).

## IV.   LEGAL ANALYSIS.

### A.  *Petitioner Is Governed by 8 U.S.C. § 1226(a), Not 8 U.S.C. § 1225.*

The threshold question is whether Petitioner is subject to mandatory detention as an "applicant for admission" under 8 U.S.C. § 1225(a) and (b)(2). Section 1225(a)(1) defines "applicant for admission" to mean "[a]n alien present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1). Detention of such an alien is mandatory pursuant to § 1225(b)(2)(A), subject only to "temporar[y] release[] on parole 'for urgent humanitarian reasons or significant public benefit.'" *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (quoting 8 U.S.C. § 1182). Respondents argue that Petitioner is an "applicant for admission" under § 1225(a) and (b)(2) and therefore is not entitled to an immigration bond hearing. (ECF 4, pp. 7–11.) Petitioner, by contrast, argues that he is, at minimum, entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a), which addresses the arrest, detention, and release of "an alien" in connection with removal proceedings. The Supreme Court has held that § 1226(a) applies to "aliens already in the country." *Jennings*, 583 U.S. at 289.

The problem with Respondents' position is that it treats every person who enters the country without legal status as an "applicant for admission." *See Helbrum v. Williams Olson*, No. 4:25-cv-00349, 2025 WL 2840273, at *4 (S.D. Iowa Sept. 30, 2025); *Barrajas v. Noem*, No. 4:25-cv-00322, 2025 WL 2717650, at *4–5 (S.D. Iowa Sept. 23, 2025); *Hasan v. Crawford*, 800 F. Supp. 3d 641, 651–57 (E.D. Va. 2025); *Romero v. Hyde*, 795 F. Supp. 3d 271, 281–88 (D. Mass. 2025). Such an interpretation of § 1225 would render substantial portions of § 1226 superfluous by making "detention [] mandatory for nearly every noncitizen who has entered the United States illegally." *Hasan*, 800 F. Supp. 3d at 655–56. If this is what Congress intended, it does not make sense that it would have passed a separate provision as part of the same statutory scheme that specifically contemplates bond hearings except in enumerated situations. *See id.*; 8 U.S.C.

§ 1226(a). It is especially difficult to square the Federal Respondents' interpretation of § 1225(b)(2)(A) with Congress's recent decision to pass the Laken Riley Act to expand the scope of mandatory detention under § 1226(a). *See Barrajas*, 2025 WL 2717650, at *4; *Romero*, 795 F. Supp. 3d at 286–87. Under the Federal Respondents' interpretation of the interplay between §§ 1225 and 1226, substantial portions of the Laken Riley Act are meaningless because the persons subject to mandatory detention under the Laken Riley Act would have been subject to mandatory detention even without the Act simply by virtue of having entered the country without lawful authority. This is not how statutes are to be interpreted. "One of the 'most basic interpretive canons' is that 'a statute should be construed so that effect is given to all its provisions,' and 'no part will be inoperative or superfluous, void, or insignificant.'" *Hasan*, 800 F. Supp. 3d at 656 (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).

The strength of Petitioner's position on this issue is illustrated by the fact that most district courts have agreed with it. *See Helbrum*, 2025 WL 2840273, at *4; *Barrajas*, 2025 WL 2717650, at *4; *Hasan*, 800 F. Supp. 3d at 651–57; *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1150–53 (D. Minn. 2025); *Romero*, 795 F. Supp. 3d at 281–88. Granted, a significant minority of courts have come out differently. *See Vargas Lopez v. Trump*, 802 F. Supp. 3d 1132, 1140–43 (D. Neb. 2025); *Chavez v. Noem*, 801 F. Supp. 3d 1133, 1140–41 (S.D. Cal. 2025). This includes a recent 2–1 panel decision from the United States Court of Appeals for the Fifth Circuit. *Buenrostro-Mendez v. Bondi*, No. 25-20496, --- F.4th ----, 2026 WL 323330, at *1–10 (5th Cir. Feb. 6, 2026). The weight of authority, however, remains on Petitioner's side. *See Barrajas*, 2025 WL 2717650, at *4 ("The overwhelming majority of these courts have concluded that aliens in Petitioner's situation are governed by § 1226(a) and therefore entitled to bond hearings."). This Court will continue to follow the weight of authority and therefore concludes that Petitioner's case is governed by § 1226(a), not § 1225. Meaning: Petitioner is not subject to mandatory detention.

   *B.  Petitioner Must Be Given a Bond Hearing Before an Immigration Judge.*

The remaining question is whether to order immediate release or to give Petitioner a bond hearing before an Immigration Judge. The Court has the authority to do either one. *Demore*, 538 U.S. at 517 (recognizing that § 1226(e) "contains no explicit provision barring habeas review"). Respondents argue that even if § 1226(a) is governing, the most the Court should do is order a bond hearing given the existence of an arrest warrant. Petitioner, by contrast, argues that Respondents have not complied with governing law in connection with the warrant and thus that

4

he should be immediately released. He raises three arguments in this regard: (1) the warrant was not issued or served at the correct time; (2) the warrant lacks sufficient evidentiary basis; and (3) the warrant was not served by a qualified individual under 8 C.F.R. § 287.5(e)(3).

The Court rejects the second argument because the warrant, although a simple "check-box" document, states that probable cause exists to believe Petitioner lacks legal status in the United States based on "statements made voluntarily by the subject to an immigration officer and/or other reliable evidence." (ECF 5-1.) Because Petitioner's own Verified Petition appears to acknowledge that he lacks legal status—or, at least, does not allege that he *has* legal status—he has fallen short of meeting his burden of proving that detention is unlawful based on insufficient evidence to issue the warrant.

The record likewise falls short as to Petitioner's third argument regarding the qualifications of the arresting officer to issue a warrant, as required by 8 C.F.R. § 287.5(e)(3). Petitioner's "evidence" consists primarily of media reports suggesting that some ICE agents lack proper training. This is not enough to meet his burden of proving that the issuing officer for his warrant lacked sufficient training.

Petitioner's first argument—regarding the timing of the warrant—requires more attention because it highlights an ambiguity in immigration laws and regulations. On one hand, § 1226(a) states that the Attorney General must issue a warrant before an alien may be arrested and detained. Moreover, 8 C.F.R. § 236.1(b)(1) states that an arrest warrant may be issued "[a]t the time of issuance of the notice to appear, or at any time thereafter." Read together, these provisions appear to require the issuance of an arrest warrant (i) before the arrest itself, but (ii) not until a notice to appear has been filed. This gives Petitioner a plausible basis for arguing that an arrest warrant that pre-dates his notice to appear is improper.

On the other hand, 8 U.S.C. § 1357(a) establishes that an immigration officer has the power to act without a warrant in some circumstances, including, as relevant here, the power to:

> arrest any alien who in his presence or view is entering or attempting to enter the United States . . . or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States . . . .

*Id.* § 1357(a)(2). In turn, 8 C.F.R. § 287.3(a) states that the "examination" referenced in § 1357(a)(2) shall be made "by an officer other than the arresting officer. If no other qualified officer is readily available and the taking of the alien before another officer would entail unnecessary delay, the arresting officer, if the conduct of such examination is a part of the duties assigned to him or her, may examine the alien." Section 287.3(d) then states that except in extraordinary circumstances or where voluntary departure has been granted, a determination must be made within forty-eight hours "whether the alien will be continued in custody or released on bond and recognizance and whether a notice to appear and warrant of arrest as prescribed in 8 CFR parts 236 and 239 will be issued."

Parsing the language, these provisions give an immigration officer the authority to make a warrantless arrest if: (i) the officer has reason to believe the alien is in the United States without lawful status; (ii) the officer has reason to believe the alien is likely to escape before a warrant can be obtained for his arrest; (iii) the alien is taken without unnecessary delay for examination before a qualified immigration officer; (iv) the examining officer is different than the arresting officer unless no such person is "readily available;" and (v) a determination is made within forty-eight hours whether a notice to appear and arrest warrant will be issued.

Here, Respondents arguably should have issued the notice to appear at the same time as the arrest warrant to ensure compliance with § 1226(a) and 8 C.F.R. § 236.1(b)(1). Alternatively, they arguably should have done more to ensure compliance with the requirements in § 1357(a) and 8 C.F.R. § 287.3(a) for warrantless arrests. As the record currently stands, however, there is a pending removal proceeding and arrest warrant, both of which came into existence within forty-eight hours of Petitioner's arrest. In these circumstances, Respondents have done enough to achieve compliance with the governing statutes and regulations—which, as noted above, are ambiguous anyway—to prevent the Court from ordering Petitioner's outright release. Instead, for now, the Court simply will GRANT IN PART the Verified Petition for Writ of Habeas Corpus and ORDER that Petitioner be given an individualized bond hearing with an Immigration Judge within seven days in accordance with 8 U.S.C. § 1226(a).

The Court is ordering this limited form of relief in part because the record is unclear on whether Petitioner already had a pending removal proceeding as of the date of his arrest. The Court might reconsider and order immediate release if: (a) there *was* already a pending removal proceeding against Petitioner, (b) he was released on bond in that proceeding, and (c) there has

6

been no bond violation or other change in circumstances (like an intervening arrest) since his release. In that scenario, Petitioner would have a stronger argument for immediate release given the recognition by the Board of Immigration Appeals ("BIA") that a person's bond may not be revoked in the absence of a change in circumstances. *See, e.g.*, *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 (9th Cir. 2018) ("In *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981), the BIA recognized that 'where a previous bond determination has been made by an immigration judge, no change should be made … absent a change of circumstance.'"). Similarly, many lower courts have held that the due process clause prohibits the Attorney General from "summarily revok[ing]" an alien's bond in the absence of changed circumstances. *See, e.g.*, *Iza v. Arnott*, No. 6:25-CV-3392-MDH, 2026 WL 67152, at *3–4 (W.D. Mo. Jan. 8, 2026); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); *Kerry-Juma v. Noem*, No. CV SAG-25-04000, 2025 WL 3537525, at *2 (D. Md. Dec. 10, 2025); *Bermeo Sicha v. Bernal*, No. 1:25-CV-00418-SDN, 2025 WL 2494530, at *6 (D. Me. Aug. 29, 2025), *appeal docketed*, No. 25-2062 (1st Cir. Nov. 3, 2025).

## V.   CONCLUSION.

Based on the foregoing, IT IS ORDERED THAT:

1. Petitioner's Petition for Writ of Habeas Corpus (ECF 1) is GRANTED IN PART. Within seven days, Respondents must provide Petitioner with an individualized bond hearing governed by 8 U.S.C. § 1226(a). The Immigration Judge must decide the issue of bond or detention on the merits and may not conclude that jurisdiction to order bond does not exist.

2. Within fourteen days, one or both Parties must file a notice confirm that Petitioner has been granted the individualized bond hearing required by this Order. The notice also should state the outcome of the hearing.

**IT IS SO ORDERED.**

Dated: February 20, 2026

STEPHEN H. LOCHER
U.S. DISTRICT JUDGE

7